# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CRAIG HAMMER Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ |
| v. | ) JURY TRIAL DEMANDED |
| TRIANGLE CAPITAL CORPORATION, 3700 Glenwood Avenue, Suite 350 Raleigh, NC 27612 | ) CLASS ACTION ) ) ) |
| E. ASHTON POOLE, c/o Triangle Capital Corporation 3700 Glenwood Avenue, Suite 350 Raleigh, NC 27612 | ) ) ) ) ) |
| STEVEN C. LILLY, c/o Triangle Capital Corporation 3700 Glenwood Avenue, Suite 350 Raleigh, NC 27612 | ) ) ) ) ) |
| W. MCCOMB DUNWOODY, c/o Triangle Capital Corporation 3700 Glenwood Avenue, Suite 350 Raleigh, NC 27612 | ) ) ) ) ) |
| MARK M. GAMBILL, c/o Triangle Capital Corporation 3700 Glenwood Avenue, Suite 350 Raleigh, NC 27612 | ) ) ) ) ) |
| BENJAMIN S. GOLDSTEIN, c/o Triangle Capital Corporation 3700 Glenwood Avenue, Suite 350 Raleigh, NC 27612 | ) ) ) ) ) ) |

MARK F. MULHERN,                              )
c/o Triangle Capital Corporation              )
3700 Glenwood Avenue,                         )
Suite 350                                     )
Raleigh, NC 27612                             )
                                              )
SIMON B. RICH, JR.,                           )
c/o Triangle Capital Corporation              )
3700 Glenwood Avenue,                         )
Suite 350                                     )
Raleigh, NC 27612                             )
                                              )
and                                           )
                                              )
GARLAND S. TUCKER, III,                       )
c/o Triangle Capital Corporation              )
3700 Glenwood Avenue,                         )
Suite 350                                     )
Raleigh, NC 27612                             )
                                              )
                                              )
                                              )
                Defendants.                   )

Plaintiff Craig Hammer ("Plaintiff"), by and through his undersigned counsel, for his

complaint against defendants, alleges upon personal knowledge with respect to himself, and

upon information and belief based upon, *inter alia*, the investigation of counsel as to all other

allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Triangle,

Capital Corporation ("Triangle" or the "Company") against Triangle and the members of its

Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§

78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R.

240.14a-9, and to enjoin the vote on, among other things (i) the Company's sale of its December

31, 2017 investment portfolio to funds advised by Benefit Street Partners L.L.C. ("BSP") pursuant to the Asset Purchase Agreement, dated as of April 3, 2018 (the "Asset Purchase Agreement"), by and between the Company and BSP Asset Acquisition I, LLC ("Asset Buyer") for $981.2 million in cash ("Asset Sale"); and (ii) the Company's entry into a stock purchase and transaction agreement, dated as of April 3, 2018, ("Externalization Agreement") with Barings LLC ("Barings"), through which Barings will become the investment adviser to the Company in exchange for a cash payment from Barings of $85.0 million, or $1.78 per share, directly to the Company's stockholders ("Externalization Transaction" and together with the Asset Sale the "Proposed Transactions").

2.     On April 4, 2018, Triangle issued a press release announcing it had entered into the Asset Purchase Agreement and the Externalization Agreement.  Net of estimated transaction expenses, other one-time charges and the repayment of outstanding debt, the sale of the Company's December 31, 2017 investment portfolio and the $85.0 million shareholder payment represents total cash consideration to the Company and to Triangle stockholders of $658.6 million, or approximately $13.80 per share as of December 31, 2017, and 1.03x Triangle's December 31, 2017 net asset value.

3.     On June 1, 2018, Triangle filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC in connection with the Proposed Transactions.  The Proxy Statement, which recommends that Triangle stockholders vote in favor of the Proposed Transactions, omits or misrepresents material information concerning, among other things: (i) Triangle management's financial projections, relied upon by Triangle's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by

Houlihan; (iii) the background process leading up to the Proposed Transactions; and (iv) Houlihan's potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Triangle stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transactions.

4.      In short, unless remedied, Triangle's public stockholders will be forced to make a voting decision on the Proposed Transactions without full disclosure of all material information concerning the Proposed Transactions being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transactions unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 as well as under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because the conduct at issue had an effect in this District; and the Company is incorporated in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Triangle common stock.

9.      Triangle is a Maryland corporation and maintains its principal executive offices at 3700 Glenwood Avenue, Suite 530, Raleigh, North Carolina 27612.  Triangle invests capital in established companies in the lower middle market to fund growth, changes of control and other corporate events and offers a wide variety of debt and equity investment structures including first lien, unitranche, second lien, and mezzanine with equity components.  Triangle's investment objective is to seek attractive returns by generating current income from debt investments and capital appreciation from equity related investments.  Triangle has elected to be treated as a business development company under the Investment Company Act of 1940 ("1940 Act").  Triangle's common stock is traded on the New York Stock Exchange under the ticker symbol "TCAP."

10.      Defendant E. Ashton Poole ("Poole") was appointed Chairman of the Board in May 2017 and has served as President, Chief Executive Officer ("CEO") and a director of the Company since July 2013.

11.      Defendant Steven C. Lilly ("Lilly") has been a director of the Company and Triangle's Chief Financial Officer ("CFO") since 2006.

12.      Defendant W. McComb Dunwoody ("Dunwoody") has been a director of the Company since 2007.

13.      Defendant Mark M. Gambill ("Gambill") has been a director of the Company since 2009.

14.      Defendant Benjamin S. Goldstein ("Goldstein") has been a director of the Company since 2007.

15.     Defendant Mark F. Mulhern ("Mulhern") has been a director of the Company since October 2016.

16.     Defendant Simon B. Rich, Jr. ("Rich") has been a director of the Company since 2007.

17.     Defendant Garland S. Tucker, III ("Tucker") has been a director of the Company since 2006, and previously served as the Company's Chairman of the Board from 2006 to May 2017 and CEO from 2006 to February 2016.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     Barings is a $304+ billion global financial services firm dedicated to meeting the evolving investment and capital needs of their clients.  Part of MassMutual, Barings maintains a strong global presence with over 1,800 associates and offices in 16 countries.

20.     BSP is a leading credit-focused alternative asset management firm with over $24 billion in assets under management.  BSP manages assets across a broad range of complementary credit strategies including private/opportunistic debt, liquid loans, high yield, special situations, long-short liquid credit and commercial real estate debt.  BSP is in partnership with Providence Equity Partners L.L.C., a leading global private equity firm with more than $50 billion in capital under management.  The BSP platform was established in 2008 and is based in New York.

21.     Asset Buyer is a Delaware limited liability company managed by BSP.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of all persons and entities that own Triangle common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.  The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of May 25, 2018, there were approximately 48,050,720 shares of Triangle common stock outstanding.  All members of the Class may be identified from records maintained by Triangle or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transactions consummated.

25.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

28.     Triangle is a specialty finance company that provides customized financing to lower middle market companies located primarily in the United States.  It offers a wide variety of debt and equity investment structures including first lien, unitranche, second lien, and mezzanine with equity components.  The Company's investment objective is to seek attractive returns by generating current income from debt investments and capital appreciation from equity related investments.  Triangle's investment philosophy is to partner with business owners, management teams and financial sponsors to provide flexible financing solutions, typically investing $5.0 million - $50.0 million per transaction in companies with annual revenues between $20.0 million and $300.0 million and EBITDA between $5.0 million and $75.0 million.  The Company has elected to be treated as a business development company under the 1940 Act and to be treated as a regulated investment company under the Internal Revenue Code of 1986, as amended.

29.     On February 28, 2018, the Company reported its financial results for the fourth quarter and full year of 2017.  For the quarter, total investment income was $31.7 million, compared to total investment income of $29.9 million for the third quarter of 2017, net

investment was $17.9 million, compared to net investment income of $17.2 million for the third

quarter of 2017, and the Company's net increase in net assets resulting from operations was

$23.7 million during the fourth quarter of 2017, compared to a net decrease in net assets resulting

from operations of $57.5 million during the third quarter of 2017.  Defendant Poole commented

on the quarter's financial results, noting:

> There were several positive developments for Triangle in the fourth quarter, as the
> Company earned net investment income of $0.38 per share and saw its net asset
> value increase to $13.43 per share.  We continued the transition of our portfolio to
> more senior-oriented investments, with five of our six new debt investments in
> first or second lien positions.  We also continued to work through our legacy
> under-performing investments, including the repayment or restructuring of three
> non-accrual debt investments.

30.     For the full year 2017, total investment income was $123.0 million, compared to

total investment income of $113.7 million for the year ended December 31, 2016, net investment

income was $72.2 million, compared to net investment income of $58.9 million during 2016 and

the Company's net asset value, or NAV, at December 31, 2017, was $13.43 per share, as

compared to $13.20 per share at September 30, 2017.  The Board also declared a quarterly cash

dividend of $0.30 per share, the Company's 45th consecutive quarterly dividend since its initial

public offering in February 2007.

31.     On May 2, 2018, the Company reported its financial results for the first quarter of

2018.  For the quarter, total investment income was $26.1 million, net investment was $12.7

million, and the Company's net increase in net assets resulting from operations was $14.5

million during the first quarter of 2018.

**The Sale Process**

32.     Following the end of the fiscal quarter ended September 30, 2017, the Board

concluded that in order to maximize shareholder value over the longer term, the Company likely

would be best served by finding a suitable strategic partner having the scale, scope, range of financing products and risk profile to navigate the increasingly sophisticated direct lending market.

33.     The Company publicly announced on November 1, 2017 that the Board had elected to pursue the exploration of strategic alternatives, including the potential benefit of partnering with another organization to accelerate the Company's corporate initiatives, the potential sale of certain investments and other alternatives.

34.     Houlihan was formally engaged as the Board's financial advisor in connection with the Company's exploration of strategic alternatives on November 13, 2017.

35.     As directed by the Board on November 27, 2017, Houlihan contacted parties in connection with the strategic review process.  By January 22, 2018 a total of 22 parties had submitted 26 proposals in the aggregate, including: 11 proposals involving business combinations in which stock constituted a portion of the purchase consideration; one proposal relating to an all-cash business combination transaction; nine proposals relating to externalization of the Company's management function; three proposals relating to the purchase of all or a portion of the Company's investments that were valued below-cost as of December 31, 2017; one all-cash proposal relating to the purchase of the Company's entire investment portfolio; and one proposal relating to a preferred equity investment in the Company.  Of the 22 parties who submitted initial indications of interest, eight (including BSP, Barings, and a party referred to in the Proxy Statement as "Party F") were invited to perform further due diligence and to submit proposals and markups of draft transaction agreements.

36.     On March 2, 2018, the Company received proposals from four of these parties, including Barings.

37.     On March 5, 2018, the Company received a second round indication of interest from BSP, which included two proposals.  The first proposal proposed that various affiliated funds of BSP would acquire all of the Company common stock for an aggregate cash amount of approximately $582.0 million, or approximately $12.12 per share of Company common stock (the "BSP Second Round Stock Sale Proposal"). The second proposal proposed that various affiliated funds of BSP would acquire the Company's entire investment portfolio in exchange for a cash amount of approximately $984.2 million, or approximately 96.8% of the Company's investment portfolio fair market value as of December 31, 2017.  This proposal, after repayment of certain debt obligations and transaction expenses, implied a per share net asset value of approximately $12.69 (the "BSP Second Round Asset Purchase Proposal").

38.     In addition, on March 6, 2018, Party F delivered its second round indication of interest to the Company proposing to acquire 100% of the fully diluted common equity of the Company for an aggregate gross consideration of between $488.2 million and $573.0 million, or approximately $10.25 per share to $12.00 per share of Company common stock.  Party F's proposal presented two options to the Company. The value of the first option ("Party F Second Round Option #1") consisted of (i) stock consideration of Party F's shares with a proposed value of approximately $1.71 per share of Company common stock, (ii) cash consideration of $7.29 per share, and (iii) a contingent value right ("CVR") estimated to pay between $0.00 and $3.00 per share in cash, the value of which was contingent on the future performance of select investments in the Company's investment portfolio, payable shortly after December 31, 2021. The value of the second option ("Party F Second Round Option #2") consisted of (i) stock consideration of Party F's shares with a proposed value of approximately $2.96 per share of Company common stock and (ii) cash consideration of $7.29 per share.

39.     On March 12, 2018, Barings submitted a proposal to the Board (the "Barings Dual Transaction Externalization Proposal").   The Barings Dual Transaction Externalization Proposal proposed $85 million in cash consideration to become the Company's investment adviser, the majority of which would be paid to the Company's stockholders at closing, conditioned upon approval of the transactions. The Barings Dual Transaction Externalization Proposal also proposed (i) a $100 million purchase of outstanding shares of Company common stock via a Dutch tender offer or other agreed-upon approach, and (ii) a commitment to purchase, during the 12 months subsequent to closing, up to $50 million in aggregate amount of Company common stock in the open market at market prices below net asset value.

40.     On March 13, 2018, BSP submitted a proposal to externalize the Company's management function in conjunction with the BSP Second Round Asset Purchase Proposal (the "BSP Externalization Proposal"). The BSP Externalization Proposal included a $25 million upfront cash payment and proposed (i) a 1.5% management fee on gross assets, (ii) a 20% incentive fee above a 7% hurdle and (iii) fee waivers during the first year post-closing.

41.     On March 14, 2018, Barings confirmed that it would revise the Barings Dual Transaction Externalization Proposal to include (1) $85 million cash consideration paid in full at closing to the Company's stockholders, (2) a commitment to invest $100 million in newly issued shares of Company common stock at net asset value, determined after giving effect to the Asset Sale and the transactions contemplated thereby, at closing, and (3) a commitment to purchase up to $50 million in aggregate amount of Company common stock in the open market for an additional 12 months (two years in total) post-closing.

42.     On March 15, 2018, the Board met and decided to pursue a combination of the BSP Second Round Asset Purchase Proposal and the Revised Barings Dual Transaction

Externalization Proposal (the "BSP/Barings Dual Transaction"). The Board then directed Houlihan Lokey and Eversheds Sutherland (US) LLP to proceed in negotiations with BSP and Barings accordingly.  That same day, despite the significant interest Triangle received from other parties, the Company terminated access to the electronic data room for all parties other than Barings and BSP.

43.     The following day, Party F submitted a supplemental proposal letter, which revised the terms of Party F Second Round Option #1 to subject each CVR to a minimum total value of $2.00, noting that holders of a CVR would in no event receive less than $2.00. Additionally, Party F noted that the holders of a CVR could receive more than $3.00 per share, to the extent the amounts recovered by the CVR were in excess of $3.00 per share.

44.     Despite the continued interest from Party F and its improved proposal, the Company proceeded to focus its efforts on the BSP/Barings Dual Transaction.

45.     At an April 3, 2018, Board meeting, Houlihan rendered its fairness opinion with respect to the consideration to be received by the Company in the Asset Sale pursuant to the Asset Purchase Agreement.  The Board then voted to approve the Proposed Transactions.

46.     On the evening of April 3, 2018, the Company and Asset Buyer executed the Asset Purchase Agreement and, concurrently therewith, the Company and Barings executed the Externalization Agreement.

**The Proposed Transactions**

47.     On April 4, 2018, Triangle issued a press release announcing the Proposed Transactions.  The press release stated, in relevant part:

> RALEIGH, NC – April 4, 2018, Triangle Capital Corporation (NYSE: TCAP) ("Triangle" or the "Company") announced today that it has entered into an asset purchase agreement with an affiliate of Benefit Street Partners L.L.C. ("BSP") under which the Company will sell its December 31, 2017 investment portfolio to

funds advised by BSP for $981.2 million in cash. Simultaneously therewith, the Company entered into a stock purchase and transaction agreement with Barings LLC ("Barings"), through which Barings will become the investment adviser to the Company in exchange for a payment by Barings of $85.0 million, or $1.78 per share, directly to the Company's shareholders. In addition, Barings will make an investment of $100.0 million in newly issued shares of the Company's common stock at net asset value at closing. Furthermore, Barings has committed to purchase up to $50.0 million worth of shares of the Company's common stock in the open market at a price up to and including the then-current net asset value for a period of two years post-closing, after which Barings has agreed to use any funds remaining to purchase shares from the Company at the greater of the then current net asset value and market price. Barings' total financial commitment to the transaction is $235.0 million. Immediately following the closing of these transactions, the Company will launch a $50.0 million issuer tender to purchase shares of its common stock at prices up to and including net asset value per share.

The sale of the December 31, 2017 investment portfolio to BSP and the $85.0 million shareholder payment by Barings represent total cash consideration to the Company and to Triangle shareholders, net of the repayment of outstanding debt, of $691.2 million, or approximately $14.48 per share as of December 31, 2017, and 1.08x Triangle's December 31, 2017 net asset value per share. Net of estimated transaction expenses, other one-time charges and the repayment of outstanding debt, the sale of the Company's December 31, 2017 investment portfolio and the $85.0 million shareholder payment represents total cash consideration to the Company and to Triangle shareholders of $658.6 million, or approximately $13.80 per share as of December 31, 2017, and 1.03x Triangle's December 31, 2017 net asset value. The $13.80 per share total cash consideration to the Company and to Triangle shareholders represents a 26% premium to the April 3, 2018 closing market price of the Company's common stock.

Commenting on the two proposed transactions, E. Ashton Poole, Chairman and Chief Executive Officer of Triangle, said, "The announcement of the transactions with BSP and Barings represents the culmination of a thorough strategic review process by our Board of Directors which commenced in early November of last year. The sale of our December 31, 2017 investment portfolio for cash to BSP and the externalization of the Triangle platform by Barings delivers significant value to Triangle's shareholders and accelerates the Company's strategic transition to a senior-focused lender to the lower and middle markets. With over $304 billion of assets under management and more than 650 investment professionals, Barings possesses the scale, scope, resources and credit discipline to be successful in today's competitive direct lending environment. We are gratified that a firm with the resources and reputation of Barings actively sought out a partnership with Triangle."

Triangle's Board of Directors has unanimously approved the asset purchase agreement, the stock purchase and transaction agreement and the transactions

contemplated thereby, including the investment advisory agreement pursuant to which Barings will act as the Company's investment adviser, and, subject to certain conditions, will recommend that Triangle's shareholders approve the same, along with certain other elements of the transactions. Triangle intends to hold a special meeting of shareholders as soon as practicable to obtain the requisite shareholder approvals. The transactions are also subject to certain other closing conditions.

In conjunction with the closing of the proposed transactions, Triangle will announce the redemption of the Company's 6.375% Notes due December 15, 2022 (NYSE: TCCA) with an aggregate principal amount outstanding of $80.5 million and the Company's 6.375% Notes due March 15, 2022 (NYSE: TCCB) with an aggregate principal amount outstanding of $86.25 million. Both series of Notes will be redeemed, following at least 30 days' notice prior to the date determined for redemption, at a price equal to the outstanding principal amount of the Notes plus accrued interest to the date of redemption.

Based on the terms of the asset purchase agreement under which BSP is deemed to have acquired the economics of Triangle's investment portfolio at the signing thereof, the Company expects to discontinue paying a quarterly dividend starting with the second quarter of 2018. The transactions are expected to close in June or July of 2018, at which time shareholders will receive the payment of $1.78 per share as part of the Barings externalization transaction.

Houlihan Lokey Capital Inc. served as financial adviser and Eversheds Sutherland (US) LLP served as legal counsel to Triangle. Ropes & Gray LLP acted as legal counsel to BSP. Wells Fargo Securities LLC served as financial adviser and Dechert LLP served as legal counsel to Barings.

## **Insiders' Interests in the Proposed Transactions**

48.      Triangle insiders are the primary beneficiaries of the Proposed Transactions, not the Company's public stockholders.   The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transactions not available to Plaintiff and Triangle's public stockholders.

49.      Triangle insiders stand to reap substantial financial benefits for securing the deal with BSP and Barings.   Notably, if they are terminated in connection with the Proposed Transactions, Triangle's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

**Golden Parachute Compensation**

| Name | Cash Severance ($)(1) | Pro-Rata Cash Bonus ($)(2) | Unvested Equity ($)(3) | Deferred(4) Compensation | Perquisites/ Benefits ($)(5) | Other ($)(6) | Total ($) |
|---|---|---|---|---|---|---|---|
| E. Ashton Poole | $1,416,875 | $947,844 | $1,703,283 | $ 135,117 | $ 59,806 | — | $4,262,925 |
| Steven C. Lilly | $1,207,500 | $814,479 | $1,346,120 | $ 106,873 | $ 58,952 | — | $3,533,924 |
| Jeffrey A. Dombcik | $1,097,500 | $703,354 | $1,135,880 | $ 94,512 | $ 60,348 | — | $3,091,594 |
| Cary B. Nordan | $1,151,250 | $751,625 | $1,200,120 | $ 94,512 | $ 59,152 | — | $3,256,659 |
| Douglas A. Vaughn | $1,029,375 | $717,938 | $1,118,360 | $ 94,512 | $ 59,724 | — | $3,019,909 |

50.     Additionally, the Board has established a bonus pool in the amount of $2,500,000 to be allocated among Company employees for the successful closing of the Proposed Transactions.

**The Proxy Statement Contains Material Misstatements and Omissions**

51.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Triangle's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transactions.

52.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Triangle's financial projections, relied upon by Triangle's financial advisor Houlihan; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Houlihan; (iii) the background process leading to the Proposed Transactions; and (iv) Houlihan's potential conflicts of interest.  Accordingly, Triangle stockholders are being asked to make a voting decision in connection with the Proposed Transactions without all material information at their disposal.

*Material Omissions Concerning Triangle's Financial Projections*

53.     The Proxy Statement is materially deficient because it fails to disclose material

information relating to the Company's intrinsic value and prospects going forward.

54.     First, the Proxy Statement omits material information regarding Triangle management's financial projections (the "Company Projections") and the financial analyses performed by the Company's financial advisor Houlihan.

55.     For example, the Proxy Statement states:

> Houlihan Lokey performed a discounted cash flow analysis of the Company based on the Company Projections. Houlihan Lokey applied a range of terminal value multiples of 0.90x to 1.00x, taking into account the results of the selected companies analysis and its experience and professional judgment, to the Company's net asset value and discount rates ranging from 9.0% to 11.0%, taking into account the results of the selected companies analysis and the Company's estimated cost of equity.

Proxy Statement at 75.  The Proxy Statement fails, however, to specifically identify and disclose the Company's net asset value utilized by Houlihan in its *Discounted Cash Flow Analysis* ("DCF").

56.     The omission of this information renders the statements in the "Summary of Company Projections" and "Opinion of the Financial Advisor to the Company" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Houlihan's Financial Analyses***

57.     The Proxy Statement describes Houlihan's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Houlihan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Triangle's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Houlihan's fairness opinion in determining whether to vote in favor of the Proposed

Transactions.  This omitted information, if disclosed, would significantly alter the total mix of information available to Triangle's stockholders.

58.     As set forth above, with respect to Houlihan's DCF, the Proxy Statement fails to specifically identify and disclose the Company's net asset value utilized by Houlihan to derive an implied enterprise value reference range for the Company and further fails to disclose and quantify the inputs and assumptions underlying the discount rate range of 9.0% to 11.0% used in the analysis.

59.     Additionally, the Proxy Statement fails to disclose the following information that was provided by Houlihan at the request of the Board: "(ii) an illustrative implied Net Asset Value Per Share of the Company as of December 31, 2017 pro forma for the asset sale transaction based on the December 31, 2017 NAV as provided by Company management and assumptions and terms provided by or discussed with Company management, and (iii) an illustrative implied Net Asset Value Per Share of the Company as of December 31, 2017 pro forma for the asset sale transaction and the externalization transaction based on the December 31, 2017 NAV as provided by Company management and assumptions and terms provided by or discussed with Company management."  Proxy Statement at 75.

60.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

61.     The omission of this information renders the statements in the "Opinion of the Financial Advisor to the Company" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transactions***

62.     The Proxy Statement omits material information relating to the sale process leading up to the Proposed Transactions.

63.     Critically, the Proxy Statement fails to disclose the mechanics of the CVR component contained in Party F's Second Round Option #1.  Triangle stockholders need to be provided with this information in order to weigh Party F's proposal as compared to the Proposed Transactions.

64.     Additionally, the "Reasons for the Transactions" section of the Proxy Statement is false and misleading as it sets forth that: "Including the range of the *potential* value per share of the CVR, the aggregate potential value in Party F Second Round Option #1 to the Company's stockholders was equal to a range of approximately 82% to 89% of the Company's net asset value as of December 31, 2017."  Proxy Statement at 67.  Emphasis added.  In fact, including the range of the ***minimum***, not ***potential***, value per share of the CVR, the aggregate potential value in Party F Second Round Option #1 to the Company's stockholders was equal to a range of approximately 82% to 89% of the Company's net asset value as of December 31, 2017.  Party F's March 16, 2018 supplemental proposal noted that the holders of a CVR could receive more than $3.00 per share, pushing the aggregate potential value in Party F Second Round Option #1 to the Company's stockholders over $12.00 per share and potentially above the Company's net asset value as of December 31, 2017.

65.     The omission of this information renders the statements in the "Background of the Transactions" and "Reasons for the Transactions" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Houlihan's Potential Conflicts of Interest***

66. Further, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Houlihan.

67. Specifically, the Proxy Statement fails to disclose whether Houlihan has performed past work for Triangle and, if so, the amount of any compensation Houlihan has received in connection with such services.

68. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives. Triangle stockholders need to be provided with a description of the services and the fees received for these services performed by Houlihan on behalf of Triangle to compare these services and fees to the fees received by Houlihan for work performed for Barings and BSP. This information is essential to allow Triangle stockholders to compare the historical relationships Triangle had with the Company, Barings and BSP and assess whether Houlihan's strong historical relationship with Barings and BSP could have impacted its advice provided to Triangle.

69. The omission of this information renders the statements in the "Opinion of the Financial Advisor to the Company – Other Matters" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

70. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transactions, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transactions and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

71.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

73.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the sales process for the Company, the financial analyses performed by the Company's financial advisor, and the actual intrinsic standalone value of the Company.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

74.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transactions.

75.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

76.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

77.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

78.     The Individual Defendants acted as controlling persons of Triangle within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Triangle and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

79.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

80.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transactions.  They were thus directly involved in the making of the Proxy Statement.

81.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the

Proposed Transactions.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

82.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

83.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated  thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Triangle's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Triangle, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transactions and any vote on the Proposed Transactions, unless and until defendants disclose and disseminate the material information identified above to Triangle stockholders;

C.     In the event defendants consummate the Proposed Transactions, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange

Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 9, 2018

LEVI & KORSINSKY LLP

*/s/ Donald J. Enright*
Donald J. Enright (Bar No. 13551)
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, DC 20007
T: (202) 524-4290
F: (202) 333-2121
Email: denright@zlk.com
etripodi@zlk.com

*Attorneys for Plaintiff*

OF COUNSEL:

WEISSLAW LLP
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

FEDERMAN & SHERWOOD
William B. Federman
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com

*Attorneys for Plaintiff*